## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| IN RE APPLICATION OF THE ) | |
| UNITED STATES OF AMERICA FOR ) | MISC. NO. 2:17-mj-704 |
| AN ORDER PURSUANT TO ) | |
| 18 U.S.C. § 2703(d) ) | **Filed Under Seal** |

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel,

respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C.

§ 2703(d). The proposed Order would require Yahoo Holdings Inc., an Internet Service Provider

located in Sunnyvale, CA, to disclose certain records and other information pertaining to the

email account(s): aunified1@yahoo.com, sweetnsexy233@yahoo.com,

legodemo.mitchs@yahoo.com, legodemo.mitch@yahoo.com, cindymccutchen@yahoo.com,

candacestevenson1@yahoo.com, legodemolition@yahoo.com. The records and other

information to be disclosed are described in Attachment A to the proposed Order. In support of

this application, the United States asserts:

### LEGAL BACKGROUND

1.     Yahoo Holdings Inc. is a provider of an electronic communications service, as

defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C.

§ 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to

require Yahoo Holdings Inc. to disclose the items described in Part II of Attachment A. *See* 18

U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of

Attachment A).

2.      This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3.      A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

THE RELEVANT FACTS

4.      The United States is investigating violations of the fraud and money laundering statutes. The investigation concerns possible violations of, inter alia, 18 U.S.C. § 1341 (Mail frauds and swindles) and 18 U.S.C. § 1956 (Laundering of monetary instruments) and 18 U.S.C. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity).

5.      Evidence gathered to date indicates that Mitch Stevenson and others conducted a fraudulent scheme to obtain two life insurance policies in 2009 that would pay him and family members $2,900,000 upon the death of his sister, Tina Stevenson. The United States mail was used during the course of perpetrating this fraud. Mitch Stevenson and his wife and daughter then used the proceeds of the fraud in a manner violating the money-laundering statutes.

6.      On or about January 15, 2009, two applications for a focus-term 20-year life insurance policy were received by West Coast Life Insurance Company insuring Tina Stevenson

for a combined $2,900,000. Policy number ending in 94 was for $1,500,000 and was owned by Mitch Stevenson. Policy number ending in 95 was for $1,400,000 and was owned by Steve Stevenson. Both Mitch and Steve Stevenson were the beneficiaries of the policies they owned. On or about February 9, 2011, amendments were made to the policies to change the ownership of the policies to Candace Stevenson and Patricia Stevenson. The policies would be paid out upon the death of Tina Stevenson.

7.      Mitch Stevenson is the brother of Tina Stevenson. Patricia Stevenson is the wife of Mitch Stevenson. The application states that Steve Stevenson is the son of Tina Stevenson. A witness stated that he believes Steve Stevenson to be the son of Mitch Stevenson and Patricia Stevenson. Records obtained during the investigation state that Tina Stevenson does not have any children. Candace Stevenson is the daughter of Mitch Stevenson and Patricia Stevenson.

8.      The policies were sold to Mitch Stevenson and Steve Stevenson through Elite Marketing located in Houston, Texas. On or about April 25, 2017, IRS-CI Special Agent Westendorf interviewed Carol Clover, assistant vice president of Brokerage Services with Elite Marketing. Clover is listed as the agent that arranged the sale of policy numbers ending in 94 and 95. Clover stated that the information on the applications would have come from Mitch Stevenson or Tina Stevenson although she cannot specifically recall talking to them. Clover would have mailed the applications to Mitch Stevenson, Steve Stevenson, and Tina Stevenson for them to sign and they were ultimately mailed back Clover. Clover also said that the first premium payments for the policies would have been mailed to her.

9.      The applications for both policies required Tina Stevenson's employment information. The information provided on the applications regarding her employment history stated that Tina Stevenson worked as a field manager at A-Unified for nine years—that is, going

3

back to 2000—and had annual income of $133,000. Evidence obtained during the investigation has revealed that A-Unified is a business entity associated with Mitch Stevenson and Steve Stevenson. Evidence suggests that Tina Stevenson did not actually work at A-Unified including admitting papers prepared during multiple visits Tina Stevenson had to the emergency room at Mercy Franciscan - Western Hills Hospital in Cincinnati between 2006 and 2012, that she was unemployed.

10. The applications for the policies required Tina Stevenson's medical history. The applications for each policy stated that Tina Stevenson has never been treated for or told by a physician that she had the following:

- Cancer, diabetes, heart disorder, high blood pressure, stroke, mental or nervous disorders, tumors, ulcers, or any disorder of bladder, kidney, liver, or lungs

- Arthritis, gout, or other disorders of muscles; joints, spine, stomach, intestines, or chest pain or asthma

11. The application further states that Tina Stevenson has not had any prescription medication in the last 12 months, has not been advised to have or contemplated having a surgical operation, and has not within the last 5 years suffered from any disease or received medical or surgical treatment for any condition not previously listed. The application also states Tina Stevenson's height was 5'3" and her weight was 170 pounds at the time it was prepared.

12. Between February 2007 and February 2009, Tina Stevenson made approximately 17 visits to the emergency room at Mercy Franciscan - Western Hills Hospital in Cincinnati, Ohio for serious medical ailments. The medical records obtained from Mercy Franciscan - Western Hills Hospital in Cincinnati suggest Tina Stevenson actually did have many of the conditions specified on the application for life insurance including diabetes, high blood pressure, and ulcers. Furthermore, these records indicate she was 5'2" tall and weighed approximately 375

to 400 pounds. On January 18, 2009, a few weeks before the application was prepared,

Stevenson was in the hospital and her weight was listed as 387 pounds.

13. As part of the application process, Tina Stevenson needed to submit to a medical

examination. Evidence that an imposter was used during the physical examination includes the

following:

- The examination was conducted on either February 6, 2009, or February 7, 2009, in Sugar Land, Texas, 3:40 p.m. central time (4:40 p.m. eastern standard time) and Tina Stevenson was in the emergency room at Mercy Franciscan – Western Hills Hospital located in Cincinnati, Ohio at approximately 5:01 p.m. eastern standard time on February 6, 2009.

- The person being examined was measured to be 5'3" and 176 pounds while Tina Stevenson was medically diagnosed as morbidly obese and was 5'2" tall and weighed 387 pounds only a few weeks before the examination per records obtained from Mercy Franciscan – Western Hills Hospital located in Cincinnati, Ohio, related to an emergency visit there on January 18, 2009.

- Tina Stevenson was unable to travel to a hospital in Cincinnati, Ohio, the city in which she lived, due to lack of transportation yet at approximately the same time she was able to be in Sugar Land, Texas, for the examination required during the life insurance application process.

- The residence of the person examined was in Sugar Land, Texas, and Tina Stevenson resided in Cincinnati, Ohio.

14. On January 9, 2012, Tina Stevenson died at Mercy Franciscan - Western Hills

Hospital in Cincinnati, Ohio. The certificate of death lists end stage staph septicemia as the cause

of death.

15. On or about January 26, 2012, Patricia Stevenson and Candace Stevenson with a

mailing address of 8662 Hampton Bay Place, Mason, Ohio, submitted Claimant's Statements for

policy numbers ending in 94 and 95 to West Coast Life Insurance. The claim was submitted via

Express Mail, United States Postal Service. The mailing originated from Mason, Ohio.

16. Collectively, Patricia and Candace Stevenson received checks totaling more than

$2.9 million from West Coast Life Insurance Company. Mitch, Patricia, and Candace Stevenson

then engaged in a complex sequence of transactions designed to conceal and disguise the nature, location, source, ownership, and/or control of the proceeds of the life-insurance fraud. They opened several bank accounts with multiple banks, and transferred the funds from account to account for no apparent reasonable economic purpose. They also conducted monetary transactions exceeding $10,000, including the purchases of a 2012 Bentley GT Convertible, the down payment and monthly payments on a home, and other large expenses.

17.     On June 22, 2017, Mitch Stevenson, Patricia Stevenson, and Candace Stevenson were indicted by a grand jury in the Southern District of Ohio on multiple charges of 18 U.S.C. § 1957 (transactional money laundering) and one count of 18 U.S.C. § 1956(h) (conspiracy to commit money laundering) related to the laundering of the proceeds from the fraudulently obtained life insurance policy in the name Tina Stevenson.

18.     On August 10, 2017, IRS-CI executed a search warrant on the defendants' home. Agents found life-insurance documents both relating to the fraudulent policy involved in the defendants' indicted criminal activity and relating to other policies. The United States is investigating whether the defendants or others have been involved in additional life-insurance fraud. IRS-CI has obtained documents related to the policies from life-insurance companies. The policies have various owners, various named insureds, and various beneficiaries. The policies have ties to each of the defendants, as well as to Vincent Stevenson, a relative of the defendants. The documents also deal with life-insurance policies spanning several years. For example, a "Notice of Payment Due" from MassMutual Financial Group shows that a policy was issued on June 23, 2010. The Notice was prepared on May 30, 2014. A letter to Vincent Stevenson from the Lincoln Financial Group is dated October 3, 2016. The email addresses for which this

Application seeks records were found in bank records, life-insurance records, records of the Stevensons' businesses, and in interviews.

REQUEST FOR ORDER

19.    The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the events described above, and to determine the nature and scope of their activities. Accordingly, the United States requests that Yahoo Holdings Inc. be directed to produce all items described in Part II of Attachment A to the proposed Order.

20.    The United States understands that it is possible that the provider stores some portion of the information sought solely outside of the United States. In 2016, the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States. *See In re Warrant to Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corp.*, 829 F.3d 197 (2d Cir. 2016). The Second Circuit decision is not binding on this Court, and the United States respectfully requests that the Order apply to all responsive information—including data stored outside the United States—pertaining to the identified accounts that is in the possession, custody, or control of the provider. At this time, however, the United States is not seeking any responsive information that is stored solely outside the United States. Instead, for such responsive information, the United States requests that the Court order the provider to preserve such information and identify to the government (that is, the law enforcement entity serving the Order or the United States Attorney's Office) the specific

physical location or locations where the information is stored. If responsive information is stored solely outside the United States, the government may seek to compel disclosure through a motion to the Court.

21.     The United States further requests that the Order require Yahoo Holdings Inc. not to notify any person, including the subscribers or customers of the account(s) listed in Part I of Attachment A, of the existence of the Order until further order of the Court. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. See 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

22.     The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of

the targets of the investigation. Accordingly, there is good cause to seal these documents because

their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
(614) 469-5715
Fax: (614) 469-5653
Peter.Glenn-Applegate@usdoj.gov